# In the United States Court of Federal Claims

No. 17-183 C

Filed: January 5, 2018[*]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| \* | 5 U.S.C. § 706 (2012) (Administrative Procedure Act, Scope of Judicial Review); |
| \* | 28 U.S.C. § 1491(b)(1) (2012) (United States Court of Federal Claims Bid Protest Jurisdiction); |
| \* | 31 U.S.C. §§ 3551–3556 (2012) (Procurement Protest System); |
| SIGMATECH, INC., \* | 48 C.F.R. § 9.104-1 (General Standards); § 10.001(b) (Policy); § 15.305(a) (Proposal Evaluation); § 15.404-2 (Data To Support Proposal Analysis); § 19.201(a) (General Policy); § 19.501(g) (General); § 19.502-2(b)(1)–(2) (the "Rule of Two"); § 52.219-14(c)(1) (Limitations On Subcontracting); |
| Plaintiff, \* | |
| v. \* | |
| THE UNITED STATES, \* | |
| Defendant. \* | Rules of the United States Court of Federal Claims ("RCFC") 15(a)(1)(B) (Amending As A Matter Of Course); 52.1 (Motion for Judgment on the Administrative Record). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Roderic G. Steakley**, Sirote & Permutt, P.C., Huntsville, Alabama, Counsel for Plaintiff.

**Agatha Koprowski**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Chief Judge*.

---

[*] On December 29, 2017, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to redact any confidential and/or privileged information from the public version and note any citation or editorial errors that required correction. The parties had until January 5, 2018, to file any proposed redactions or revisions. The proposed redactions have been made herein.

I.      **RELEVANT FACTUAL BACKGROUND.**[1]

    A.      **Prior Procurement Actions Concerning The United States Department Of The Army's Foreign Military Sales Services**.

        1.      **Blanket Purchase Agreement W31P4Q-05-A-0026**.

Since 2007, the United States Army Security Assistance Command (the "USASAC") has procured Security Assistance (SA)/Foreign Military Sales (FMS) programmatic support services ("FMS"), pursuant to task orders issued under Blanket Purchase Agreement ("BPA") W31P4Q-05-A-0026. AR 835, 1000, 1002. Sigmatech, Inc. ("Sigmatech") is the incumbent contractor for FMS services. AR 1000, 1560.

On April 18, 2011, the United States Department of the Army, Army Contracting Command-Aberdeen Proving Ground (the "Army") awarded Sigmatech Task Order 0019, under BPA W31P4Q-05-A-0026, to perform FMS services for USASAC for a period of five years. AR 1560. The ceiling amount of Task Order 0019 was $46,436,974.39. AR 1560.

On May 20, 2015, a Limited Source Justification and Approval ("J&A") was executed by the USASAC to increase the ceiling amount of Task Order 0019 by $9 million, or a revised ceiling amount of $55,436,974.39, to maintain FMS services until the Army issued a new solicitation for FMS services. AR 1560–61.

On September 30, 2015, a second J&A was executed by the USASAC to increase the amount of Task Order 0019 by an additional $204,000 to maintain contractor programmatic support to the USASAC until the Army issued a new solicitation for FMS services. AR 1751–52.

        2.      **Solicitation No. W91CRB-16-R-0001.**

On December 11, 2015, the Army issued Solicitation No. W91CRB-16-R-0001 (the "December 11, 2015 Solicitation") to re-compete the procurement of FMS services for the USASAC. AR 1602, 1734. The December 11, 2015 Solicitation was issued as small business set-aside.[2] AR 1603. The Contracting Officer designated the December 11, 2015 Solicitation under

---

[1] The facts cited herein were derived from the February 24, 2017 Administrative Record ("AR") (ECF No. 20).

[2] The Federal Acquisition Regulation ("FAR") requires that a contracting officer "set aside any acquisition over $150,000 for small business participation[,] when there is a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices[.]" 48 C.F.R. § 19.502-2(b) (the "Rule of Two").

North American Industry Classification System ("NAICS") Code[3] 541330, *i.e.*, Engineering Services, under the Military and Aerospace Equipment and Military Weapons ("MAE&MW") small business exception, with a $38.5 million annual receipts size standard.  AR 1734.  All offers for the December 11, 2015 Solicitation were due January 11, 2016.  AR 1602.

On December 17, 2015, The Tolliver Group, Inc. filed a bid protest at the SBA Office of Hearings and Appeals (the "SBA OHA"), challenging the Contracting Officer's decision to designate the December 11, 2015 Solicitation under NAICS Code 541330, *i.e.*, Engineering Services, with a $38.5 million receipt size.  AR 1734–35.

On December 18, 2015, a third J&A was executed by the USASAC to increase the ceiling amount of Task Order 0019 by $3.6 million and extend the performance period of Task Order 0019 from April 17, 2016 to June 30, 2016.  AR 1752.

On January 11, 2016, the SBA OHA determined that the Contracting Officer erred in issuing the December 11, 2015 Solicitation under NAICS Code 541330, instead of "NAICS [C]ode 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a corresponding $15 million annual receipts size standard."  AR 1744–46.  Because the decision was issued before the close of the solicitation period, the SBA OHA directed the Contracting Officer to amend the December 11, 2015 Solicitation "to change the NAICS [C]ode designation from 541330 to 541611."  AR 1745.

On January 19, 2016, the Army amended the December 11, 2015 Solicitation to change its NAICS Code designation from 541330, *i.e.*, Engineering Services, with a $38.5 million receipt size, to 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size, pursuant to the SBA OHA's January 11, 2016 decision.  AR 1225.

On February 4, 2016, Sigmatech filed a bid protest in the United States Court of Federal Claims (the "February 4, 2016 Complaint").  AR 1211–32.  The February 4, 2016 Complaint included two counts: Count One alleged that the Contracting Officer's failure to perform a new set-aside analysis, after changing the NAICS Code of the December 11, 2015 Solicitation, was arbitrary, capricious, an abuse of discretion, and contrary to law; and Count Two alleged that the Contracting Officer's Rule of Two analysis was unreasonable.  AR 1226–30.

On April 20, 2016, the Army filed a Notice of Corrective Action in the United States Court of Federal Claims, in response to the February 4, 2016 Complaint to advise the court that the Army intended to: (1) cancel the December 11, 2015 Solicitation; (2) issue a Request For Information ("RFI") to conduct market research under NAICS Code 541611; and (3) "conduct new market research to determine if two or more small businesses are interested and capable to perform the requirement under the new NAICS Code, 541611" (the "April 20, 2016 Notice of Corrective Action").  AR 1747–48.

---

[3] NAICS Codes are assigned to an industry by the United States Small Business Administration ("SBA"), based on either the maximum number of employees or annual receipts allowed for a business and its affiliates to be considered "small."  13 C.F.R. § 121.201.

The April 20, 2016 Notice of Corrective Action stated that

the [USASAC] will review industry submissions [in response to the RFI] to determine interest and capability.  If USASAC determines that two or more small businesses are capable, then the [C]ontracting [O]fficer will use USASAC's review of small business interest and capability to determine if the Rule of Two has been satisfied.  The [C]ontracting [O]fficer's determination will be approved by the U.S. Army Research, Development and Engineering Command Office of Small Business Programs.  The Army will then issue a new solicitation.

AR 1747–48.

On April 22, 2016, the Army cancelled the December 11, 2015 Solicitation.  AR 1732.

**B.      Solicitation No. W91CRB-16-R-0039.**

On June 6, 2016, the Army issued a RFI (the "June 6, 2016 RFI") "as a means of conducting market research to identify parties having an interest in and the resources to support the requirement for programmatic services" awarded under a new solicitation designated under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size.  AR 48.

The June 6, 2016 RFI provided:

Based on the responses to this [RFI]/Market Research, [the new solicitation] may be set-aside for small businesses (in full or in part) or procured through full and open competition.

AR 48 (emphasis omitted).

The June 6, 2016 RFI also prompted potential bidders to answer sixteen questions and disclose information about their experience with similar contracts and administrative and technical capability.  AR 50–53.

Between June 8, 2016 and June 24, 2016, twenty-seven potential bidders[4] submitted responses to the June 6, 2016 RFI.  AR 118–551.

---

[4] The twenty-seven potential bidders that responded to the June 6, 2016 RFI were: ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████.  AR 118–540.

On June 29, 2016, a fourth J&A was executed by the USASAC to increase the ceiling amount of Task Order 0019 by $11.7 million, or a revised ceiling amount of $70,940,974.39, and to extend the performance period of Task Order 0019 from July 1, 2016 to March 31, 2017.  AR 1763.

Thereafter, in June and July 2016, six USASAC officials individually evaluated the June 6, 2016 RFI responses (the "USASAC Individual Evaluations").  AR 552–90.

On August 9, 2016, the USASAC published a Market Research Report For Programmatic Services For United States Army Security Assistance Command (the "August 9, 2016 Market Research Report").  AR 604–13.  Specifically, that Report included a consensus of the USASAC Individual Evaluations.  AR 605 ("Evaluation was reviewed individually and then a consensus was developed.").  The "Conclusions and Recommendations" section of the August 9, 2016 Market Research Report stated, in relevant part:

> Six different USASAC requirements officials reviewed the [June 6, 2016] RFI replies for quality and thoroughness of the potential offeror's technical capability replies for the requirement before contract solicitation.  The list of potential offeror replies resulted in eight (8) small businesses demonstrating all required services with potential to successfully provide requirements.[5] . . . The results of the market research show[] a small business (SB) set-aside, would have the most benefit to the Government for this solicitation[.]"

AR 613.

On August 10, 2016, the Contacting Officer issued the Small Business Coordination Record (the "August 10, 2016 CO Record"), that provided the following summary of the Army's acquisition plan:

> USASAC led the market research effort for this acquisition in accordance with [Army Federal Acquisition Regulation Supplement] 5110.002.  On 06 June 2016, [the Army] posted a [RFI], with responses requested by 23 June 2016.  [The Army] received twenty-seven (27) total respondents, all but four were from Small

---

[5]  The eight potential bidders identified in the August 9, 2016 Market Research Report as having "demonstrate[ed] all required services with potential to successfully provide requirements" were ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████.  AR 612.

Businesses.  Of these twenty-three (23) [small business] respondents, eight (8) were determined capable of fulfilling the requirements of this acquisition.  A copy of the [August 9, 2016 Market Research Report] is attached along with the [August 10, 2016 CO Record].

AR 794.

The August 10, 2016 CO Record also included a summary of the Contracting Officer's Rule of Two analysis:

[I]n accordance with FAR 19.502-2(b), market research indicates there is a reasonable expectation offers will be obtained from at least two responsible small business concerns, and award will be made at fair market prices based on the anticipated number of capable small business[es] participating . . . in the eventual competition.

AR 794.

Based on that analysis, the August 10, 2016 CO Record recommended that the Army issue a new solicitation as a small business set-aside.  AR 794.

On November 1, 2016, the Army issued Solicitation No. W91CRB-16-R-0039, entitled "US Army Security Assistance Command (USASAC) Programmatic Support Services" (the "November 1, 2016 Solicitation"), as a small business set-aside.  AR 829–912.  The November 1, 2016 Solicitation required that a small business provide contractor support for the USASAC's FMS programs for five years, with a ceiling amount of $95,000,000.  AR 830, 835.

On November 15, 2016, Sigmatech filed a bid protest with the United States Government Accountability Office (the "GAO") challenging the Contracting Officer's decision to set aside the November 1, 2016 Solicitation for small businesses.  AR 1000–1313.

On December 13, 2016, the Contracting Officer filed a Declaration at the GAO (the "December 13, 2016 CO Declaration"), that stated:

In my role as the [Contracting Officer] for the [November 1, 2016 Solicitation], I had overall responsibility for conducting the assessment required by [FAR] 19.502-2(b) with respect to setting aside the [November 1, 2016 Solicitation] for small business participation.

On 06 June 2016 [the Army] posted the [June 6, 2016 RFI.]  However, USASAC was responsible for reviewing the responses received and USASAC's consensus assessment was documented in [the August 9, 2016 Market Research Report].  As the [Contacting Officer], I reviewed and concurred in USASAC's assessment and findings in the [August 9, 2016 Market Research Report.]

Upon reviewing and concurring in the [August 9, 2016 Market Research Report], I referenced that report in my findings at block 11a of the [August 10, 2016 CO

Record], and attached the [August 9, 2016 Market Research Report.].   I electronically signed the [August 10, 2016 CO Record].

My assessment as the [Contracting Officer] in accordance with FAR 19.502-2 with respect to setting the [November 1, 2016 Solicitation] aside for small business is also documented in block 11a of the [August 10, 2016 CO Record].

As the [Contracting Officer] for [the November 1, 2016 Solicitation], I have personal knowledge of all facts contained within the [August 9, 2016 Market Research Report] and the [August 10, 2016 CO Record].

I declare under penalty of perjury that the foregoing is true and correct.

AR 1402–03.

## II.    PROCEDURAL HISTORY.

On February 7, 2017, Sigmatech filed, under seal, a Complaint in the United States Court of Federal Claims, alleging: at Count One that the USASAC's determination that two or more small businesses were capable of performing the November 1, 2016 Solicitation was arbitrary and capricious; and at Count Two that the Contracting Officer's decision to set aside the November 1, 2016 Solicitation for small businesses was arbitrary and capricious.  ECF No. 1 at 30–36.

On February 8, 2017, the Government filed a Motion To Request That The Court Seek An Advisory Opinion From The Government Accountability Office.  ECF No. 13.  On February 17, 2017, Sigmatech filed a Response In Opposition.  ECF No. 17.

On February 9, 2017, Sigmatech voluntarily dismissed the bid protest at the GAO.  *See* U.S. GOVERNMENT ACCOUNTABILITY OFFICE, http://www.gao.gov/docket/B-414129.1; *see also* ECF No. 31 at 28.

On February 24, 2017, the Government filed, under seal, the Administrative Record in the United States Court of Federal Claims.  ECF No. 20.  On February 27, 2017, the Government filed a Reply In Support Of Its February 8, 2017 Motion To Request That The Court Seek An Advisory Opinion.  ECF No. 21.

On March 3, 2017, Sigmatech filed an Amended Complaint ("3/3/17 Am. Compl."), pursuant to Rule 15(a)(1)(B) of the United States Court of Federal Claims, incorporating by reference Counts One and Two of the February 7, 2017 Complaint and adding Count Three, alleging that the Army failed to implement the proposed corrective action.[6]  ECF No. 22.  On March 7, 2017, the court denied the Government's February 8, 2017 Motion.  ECF No. 23.

---

[6]  The March 3, 2017 Amended Complaint states: "Sigmatech hereby realleges, adopts, and incorporates by reference paragraphs 1 through 119 of its [February 7, 2017] Complaint, together with all exhibits and appendices thereto, as if fully set forth herein," (3/3/17 Am. Compl.

On March 15, 2017, Sigmatech filed, under seal, a Motion To Compel [The Government] To Complete The Administrative Record.  ECF No. 25.  On March 24, 2017, Sigmatech filed, under seal, a Motion For Judgment On The Administrative Record ("3/24/17 Pl. Mot."), pursuant to RCFC 52.1.  ECF No. 28.  On March 27, 2017, the Government filed a Response In Opposition To Plaintiff's March 15, 2017 Motion To Compel.  ECF No. 29.

On April 3, 2017, Sigmatech filed, under seal, a Reply In Support Of The March 15, 2017 Motion To Compel The Government To Complete The Administrative Record.  ECF No. 30.  On April 21, 2017, the Government filed, under seal, a Cross-Motion For Judgment On The Administrative Record And Response In Opposition To Plaintiff's March 24, 2017 Motion For Judgment On The Administrative Record ("4/21/17 Gov't Resp.").  ECF No. 31.

On May 5, 2017, Sigmatech filed, under seal, a Reply In Support Of The March 24, 2017 Motion For Judgment On The Administrative Record And Response In Opposition To The Government's April 21, 2017 Cross-Motion For Judgment On The Administrative Record ("5/5/17 Pl. Reply").  ECF No. 32.  On May 18, 2017, the Government filed, under seal, a Reply In Support Of The April 21, 2017 Cross-Motion For Judgment On The Administrative Record ("5/18/17 Gov't Reply").  ECF No. 35.

On June 9, 2017, the court issued an Order allowing the Army to begin accepting bids under the November 1, 2016 Solicitation, so long as the Army did not award a contract until the court issued a decision on Sigmatech's February 7, 2017 bid protest.  ECF No. 36.

On August 2, 2017, Sigmatech filed, under seal, a Motion To Supplement The Administrative Record.  ECF No. 39.  On August 7, 2017, Sigmatech filed, under seal, a Motion For Preliminary Injunction.  ECF No. 40.  On August 8, 2017, the court issued an Order granting Sigmatech's Motion To Supplement The Administrative Record, but denying Sigmatech's August 7, 2017 Motion For Preliminary Injunction.  ECF No. 41.  On August 10, 2017, the Government filed a Notice Of Filing Of Completed Administrative Record.  ECF No. 42.

On August 25, 2017, Sigmatech filed, under seal, a Motion For Leave To File Sur-Reply to address "Amendments 3 and 4 of . . . [the November 1, 2016] Solicitation." ECF No. 43 at 1. On September 8, 2017, the Government filed, under seal, a Response to Sigmatech's August 25, 2017 Motion For Leave To File Sur-Reply.  ECF No. 44.  On September 15, 2017, Sigmatech filed, under seal, a Reply to the Government's September 8, 2017 Response.  ECF No. 45.

## III.   DISCUSSION.

### A.   Subject Matter Jurisdiction.

Subject matter jurisdiction is a threshold issue that a court must determine at the outset of a case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement

at 1), but did not include the text of those paragraphs.  For consistency, when referencing these paragraphs, the court cites to the March 3, 2017 Amended Complaint.

that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction

to render judgment on an action by an interested party objecting to a solicitation by a Federal agency or proposals for a proposed contract or to a proposed award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*. . . . [T]he United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012) (emphasis added).

The United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims has jurisdiction to adjudicate bid protests at "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *Res. Conservation Grp. v. United States*, 597 F.3d 1238, 1244 (Fed. Cir. 2010) (holding that the Tucker Act grants the United States Court of Federal Claims jurisdiction to adjudicate bid protests at "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout").

Count One of the March 3, 2017 Amended Complaint alleges that the Contracting Officer's decision to set aside the November 1, 2016 Solicitation only for small businesses was arbitrary, capricious, an abuse of discretion, and contrary to law. 3/3/17 Am. Compl. ¶¶ 96–109. Count Two alleges that the USASAC's decision that at least two small businesses were capable of performing the requirements of the November 1, 2016 Solicitation was arbitrary and capricious. 3/3/17 Am. Compl. ¶¶ 110–19. Count Three alleges that the Army failed to implement the proposed corrective action. 3/3/17 Am. Compl. ¶¶ 120–30.

For these reasons, the court has determined that it has jurisdiction to adjudicate the claims alleged in the March 3, 2017 Amended Complaint.

### B.    Standing.

"Standing is [also] a threshold jurisdictional issue." *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002). "The party invoking federal jurisdiction bears the burden of establishing the[ ] elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing under 28 U.S.C. § 1491(b)(1), a complaint must allege sufficient facts to show that the plaintiff: (1) is an interested party; and (2) was prejudiced by alleged errors in the procurement process. *See Myers*, 275 F.3d at 1370 (holding that standing under § 1491(b)(1) is limited to "interested parties"); *see also Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378–79 (Fed. Cir. 2009) ("[T]he question of prejudice goes directly to the question of standing[.]").

The United States Court of Appeals for the Federal Circuit has held that the term "interested party" in 28 U.S.C. § 1491(b)(1) "is construed in accordance with the Competition in Contracting Act[.]" *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing 31 U.S.C. §§ 3551–56). Therefore, to qualify as an interested party, "a protestor must show that: (1) it was an actual or prospective bidder or offeror[;] and (2) it had a direct economic interest in the procurement or proposed procurement." *Distributed Sols. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008).

In this case, the March 3, 2017 Amended Complaint alleges that Sigmatech, as the incumbent contractor, submitted a response to the June 6, 2016 RFI and "intends to bid under [the November 1, 2016] Solicitation if the small business set-aside is determined to be improper[.]" 3/3/17 Am. Compl. ¶ 12; *see also* AR 376–401. Therefore, Sigmatech satisfies the "prospective bidder" element of the interested party test.

Next, to establish a direct economic interest in the pre-award context, a plaintiff must show "a non-trivial competitive injury that can be addressed by judicial relief." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009). Therein, the United States Court of Appeals for the Federal Circuit held that a prospective bidder suffered a "non-trivial competitive injury," when it alleged that the procuring agency unlawfully issued the solicitation. *See id.* at 1362 ("We agree with the Court of Federal Claims' assessment of the 'non-trivial competitive' injury faced by [the prospective bidder] based upon its contention as to the illegality of the . . . solicitation.").

In this case, the March 3, 2017 Amended Complaint alleges that the Contracting Officer's decision to set aside the November 1, 2016 Solicitation as a small businesses set-aside—instead of proceeding as a full and open competition—was arbitrary and capricious, because two small businesses are not capable of performing the requirements of the November 1, 2016 Solicitation. 3/3/17 Am. Compl. ¶ 119. Since Sigmatech is not a "small business," it cannot currently compete for the November 1, 2016 Solicitation. 3/3/17 Am. Compl. ¶ 12. As such, Sigmatech has suffered a "non-trivial competitive injury," as a result of the Contracting Officer's decision to set aside the November 1, 2016 Solicitation for small businesses. Therefore, Sigmatech satisfies the "direct economic interest" element of the interested party test.

To establish standing, the protestor also must demonstrate prejudice. *See Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing."). "A party has been prejudiced when it can show that[,] but for the error, it would have had a substantial chance of securing the contract." *Labatt*, 577 F.3d at 1378; *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005) ("To establish 'significant prejudice' [the protestor] must show that there was a 'substantial chance' it would have received the contract award[,] but for the [alleged] errors[.]"). In other words, "the protestor's chance of securing the award must not have been insubstantial." *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

In this case, Sigmatech, as the incumbent contractor, has performed FMS programmatic support services for the Army since September 27, 2007. 3/3/17 Am. Compl. ¶ 26. Sigmatech's June 23, 2016 Response To The June 6, 2016 RFI states that, "Sigmatech can support the entire

requirement" of the November 1, 2016 Solicitation.  AR 382.  Therefore, if the Army had issued the November 1, 2016 Solicitation as a full and open competition, Sigmatech's chance of securing an award is not insubstantial.

For these reasons, the court has determined that Sigmatech has standing to seek an adjudication of the Contracting Officer's August 10, 2016 decision to set aside the November 1, 2016 Solicitation for small businesses.

### C.      The Relevant Standards of Review.

#### 1.      The Standard Of Review For Judgment On The Administrative Record, Pursuant To RCFC 52.1.

In this case, the parties filed Cross-Motions For Judgment On The Administrative Record, pursuant to RCFC 52.1.  ECF Nos. 28, 31.  The United States Court of Appeals for the Federal Circuit requires that the court must treat a judgment on the administrative record as if it were an expedited trial.  *See Bannum*, 404 F.3d at 1356.  Therefore, the existence of material issues of fact does not necessarily prohibit the court from granting a RCFC 52.1 motion, since the court's determination can be based on "factual findings from the record evidence."  *Id.* at 1354, 1356.

#### 2.      The Standard Of Review For Bid Protests.

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), Congress authorized the United States Court of Federal Claims to review challenges to agency decisions, pursuant to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2012).  *See* 28 U.S.C. § 1491(b)(4) (2012) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *see also* 5 U.S.C. § 706(2)(A) (2012) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citations omitted).

When a court reviews whether a federal agency's decision is arbitrary and capricious, the court examines whether an agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).  Therefore, the court may set aside or enjoin the agency, but "only in extremely limited circumstances."  *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983).

This standard of review is "highly deferential [and] requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  The court may not substitute its own judgment for that of the agency.  *Citizens to Preserve Overton Park, Inc. v.*

*Volpe*, 401 U.S. 402, 416 (1971).  Accordingly, the plaintiff bears a "heavy burden" and can only prevail by demonstrating that the agency committed a "clear and prejudicial" violation of applicable statutes or regulations or by showing that the agency's decision to set aside the solicitation "had no rational basis."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001).

> **D.      Plaintiff's March 24, 2017 Motion For Judgment On The Administrative Record.**

>> **1.      Plaintiff's Argument.**

Sigmatech argues that the Contracting Officer applied an incorrect standard in making the small business set-aside determination, because the Army's April 20, 2016 Notice of Corrective Action stated that it would set aside the November 1, 2016 Solicitation for small businesses, only if the "USASAC determine[d] that two or more small businesses are *capable*."  3/24/17 Pl. Mot. at 30 (quoting AR 1747) (emphasis added).

Even if the Contracting Officer correctly applied the Rule of Two in making the small business set-aside determination, the decision to set aside the November 1, 2016 Solicitation for small businesses was arbitrary and capricious, because the Administrative Record evidences that none of the eight "small business" potential bidders had the requisite experience or capability to meet the requirements of the November 1, 2016 Solicitation and the Contracting Officer did not consider whether those eight "small business" potential bidders were in a position to make offers at fair market prices.  3/24/17 Pl. Mot. at 31, 40.

In particular, the Administrative Record evidences that "none of the small business [potential bidders] had the experience, employees, [n]or other capabilities to perform the effort required under the [November 1, 2016] Solicitation," because it entailed a "$96 million effort requiring 127 [full-time equivalent ("FTE")] employees," since the largest job performed by any of the eight "small business" potential bidders was a "$38.5 million effort . . . by a company that only has 35–50 employees."  3/24/17 Pl. Mot. at 29–30 (citing AR 134–35, 830, 985).  For example, ████████, one of the eight "small business" potential bidders found "capable" by the USASAC evaluators, identified only one task that was considered to be "similar in size and complexity."  3/24/17 Pl. Mot. at 36 (citing AR 341).  The total value of that task was $7.2 million and required nine FTE and two [part-time equivalent] personnel.  3/24/17 Pl. Mot. at 36.  The ████████ task description also did not discuss services essential to meeting the requirements of the November 1, 2016 Solicitation, such as international travel, managing independent funding streams, and supporting commands around the world.  3/24/17 Pl. Mot. at 36.

Similarly, there is no evidence in the Administrative Record that the Contracting Officer considered whether the eight "small business" potential bidders were capable of providing FMS support on the scale required by the November 1, 2016 Solicitation.  3/24/17 Pl. Mot. at 36.  For example, Question 6 of the RFI asked potential bidders: "Is your company currently, or has your company provided similar type effort (to include size and complexity) in the past?"  3/24/17 Pl. Mot. at 32 (citing AR 7).  All of the eight "small business" potential bidders answered in the affirmative.  3/24/17 Pl. Mot. at 32 (citing AR 118–540).  But, the example contracts identified by those eight "small business" potential bidders evidenced that none had prior experience with

services of a similar size and complexity.  3/24/17 Pl. Mot. at 32.  In fact, the largest contract submitted by each of the eight "small business" potential bidders ranged from 1.35% to 40% of the value of the $95 million November 1, 2016 Solicitation.  3/24/17 Pl. Mot. at 33.

The Contracting Officer also did not consider whether the eight "small business" potential bidders would be able to make offers at a fair market price, because none stated an intent to perform 100% of the November 1, 2016 Solicitation, without relying on subcontractors.  3/24/17 Pl. Mot. at 40.  But, the Administrative Record does not evidence whether the USASAC conducted an analysis of the composition of the "teams" or whether they had sufficient personnel, experience, and capability to perform the November 1, 2016 Solicitation at a fair market price.  3/24/17 Pl. Mot. at 43.

In addition, the Contracting Officer's "small business" set-aside decision was premised on a misunderstanding that Task Order 0019, the incumbent contract awarded to Sigmatech under the December 11, 2015 Solicitation had been performed by a "small business," because the August 9, 2016 Market Research Report states that: "Past acquisition strategies used [were] for small business.  A small business has had this contract for the past 5 plus years."  3/24/17 Pl. Mot. at 39 (quoting AR 605).  Sigmatech has been performing this contract for the past five years under Task Order 0019, but it is not a "small business," under the $15 million size standard set forth by NAICS Code 541611, nor was it in 2007, when the contract first was awarded.  3/24/17 Pl. Mot. at 39.

Finally, the Contracting Officer did not independently evaluate the eight "small business" potential bidders when making the Rule of Two determination.  3/24/17 Pl. Mot. at 31.  Instead, the Contracting Officer rendered a small business set-aside decision, based on the USASAC's August 9, 2016 Market Research Report.  3/24/17 Pl. Mot. at 31–32.

In sum, the Contracting Officer's August 10, 2016 decision to set aside the November 1, 2016 Solicitation for small businesses was arbitrary, capricious, and contrary to law.

## 2.    The Government's Response.

The Government responds that the Contracting Officer properly exercised discretion and business judgment, in finding that it had a reasonable expectation that "[o]ffers will be obtained from at least two responsible small business concerns" and an "[a]ward will be made at fair market prices."  4/21/17 Gov't Resp. at 10 (citing 48 C.F.R. § 19.502-2(b)); *see also Res-Care, Inc. v. United States*, 735 F.3d 1384, 1390 (Fed. Cir. 2013) ("A contracting officer's decision to set aside a contract for small businesses invokes highly deferential rational basis review.") (internal quotations and citations omitted).

The Administrative Record supports the Contracting Officer's reasonable expectation that it would receive offers at fair market prices from at least two "small businesses," based on the USASAC's August 9, 2016 Market Research Report.  4/21/17 Gov't Resp. at 10.  That Report was based on "a thorough qualitative analysis of numerous factors, including the firm's technical and administrative resources and its substantive experience" and concluded that eight of the "small

business" potential bidders "ha[d] an interest in and the resources to support the requirement for programmatic services." 4/21/17 Gov't Resp. at 11 (quoting AR 48); *see also* AR 604–13 ("The list of potential offeror replies resulted in eight (8) small businesses demonstrating all required services with potential to successfully provide [the] requirements [of the November 1, 2016 Solicitation].").

As discussed herein, the following summaries of the eight "small business" potential bidders demonstrate that the August 9, 2016 Market Research Report supported the Contracting Officer's small business set-aside decision.

**a.** ███████████████████████

The USASAC had a reasonable expectation that ██████████████████ ██████████████████████ was a responsible "small business." 4/21/17 Gov't Resp. at 11. First, ██████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 11 (citing AR 130). ████████ also had the technical capabilities, administrative capability, and personnel to perform the requirements of the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 11 (citing AR 131–35). In addition, ██████ represented that it could perform 100% of the overall contract requirements. 4/21/17 Gov't Resp. at 12 (citing AR 131). For example, ███████ has over eighteen years of experience in FMS support, including providing programmatic and execution support of FMS to a dozen United States military components and foreign governments. 4/21/17 Gov't Resp. at 11–12 (citing AR 135–37). ██████ also had between thirty-five and fifty employees, and managed a significant number of sub-contractors on numerous other contracts. 4/21/17 Gov't Resp. at 12 (citing AR 131, 135). And, ██████'s accounting system was approved by the Defense Contract Audit Agency. 4/21/17 Gov't Resp. at 12 (citing AR 136).

**b.** ██████████████████████████

The USASAC had a reasonable expectation that ████████████████████ ██████████ was a responsible "small business." 4/21/17 Gov't Resp. at 13. First, ██████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 13 (citing AR 140–67). The Administrative Record also demonstrates that ██████ had the technical capabilities, administrative capability, and personnel to perform the requirements of the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 13 (citing AR 151). In addition, ██████ indicated that it would be able to perform 75% of the overall contract requirements. 4/21/17 Gov't Resp. at 13 (citing AR 144, 151). ██████ currently has sixty-one employees, with core competencies to support the contract. 4/21/17 Gov't Resp. at 13 (citing AR 144, 151). ██████ also uses an accounting system that complies with the Defense Contract Auditing Agency. 4/21/17 Gov't Resp. at 13 (citing AR 157). And, ██████ has experience with the core requirements of the November 1, 2016 Solicitation, including: human resource management; program management; system analysis and security assistance program support; schedule development and assessment; analysis and leadership

14

development; and security assistance program support. 4/21/17 Gov't Resp. at 13 (citing AR 144–48). ████ also identified three recent similar contract efforts with the United States military and described the particular tasks it performed for those efforts, including tracking approximately $3.35 billion in FMS across 5,000 projects in Iraq. 4/21/17 Gov't Resp. at 13–14 (citing AR 149–52).

### c.   ██████████████

The USASAC had a reasonable expectation that ████████ ████████████ ████ ████████████ was a responsible "small business." 4/21/17 Gov't Resp. at 14 (citing AR 270–84). First, ████████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 14 (citing AR 276). The Administrative Record evidences that ████████ has the technical capabilities, administrative capability, and personnel to perform the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 14 (citing AR 276–83). ████████████ indicated that it would be able to perform 65% of the overall contract requirements. 4/21/17 Gov't Resp. at 14 (citing AR 276). ████████ currently has twenty-four employees capable of supporting the contract and has experience managing and hiring sub-contractors. 4/21/17 Gov't Resp. at 14 (citing AR 281). ████████ also verified that it uses an accounting system approved by the Defense Contract Audit Agency. 4/21/17 Gov't Resp. at 14 (citing AR 281). And, ████████ provided descriptions of six similar contracts, including FMS experience outside the United States, in which ████████ provided "staffing planning and resource support, administrative support tasks, program access and human resources, policy support, technical support, program security office supports, program management support, cost and pricing support, and contract administration support." 4/21/17 Gov't Resp. at 15 (citing AR 277–80).

### d.   ██████████

The USASAC had a reasonable expectation that ████████████████ was a responsible "small business." 4/21/17 Gov't Resp. at 15 (citing AR 338–49). First, ████████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 15 (citing AR 340). The Administrative Record evidences that ████████ has the technical capabilities, administrative capability, and personnel to perform the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 15 (citing AR 340, 344–49). In addition, ████████ indicated that it would be able to perform 51% of the overall contract requirements. 4/21/17 Gov't Resp. at 15–16 (citing AR 340). ████████ currently employs twenty-two individuals and has extensive experience managing sub-contractors. 4/21/17 Gov't Resp. at 16 (citing AR 344, 346). ████████ provided the USASAC with information about an anticipated small business sub-contractor, including that sub-contractor's FMS experience. 4/21/17 Gov't Resp. at 16 (citing AR 346–48). ████████ has performed two contracts that required work similar to that required by the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 16 (citing AR 349). ████████ also verified that it uses an accounting system approved by the Defense Contract Audit Agency. 4/21/17 Gov't Resp. at 16 (citing AR 345).

**e.** ████████████

The USASAC had a reasonable expectation that ████████████████ was a responsible "small business." 4/21/17 Gov't Resp. at 17 (citing AR 351–62). First, ████████████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 17 (citing AR 355). The Administrative Record evidences that ████████████ has the technical capabilities, administrative capability, and personnel to perform the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 17 (citing AR 355–61). ████████████ indicated that it would be able to perform 51% of the overall contract requirements. 4/21/17 Gov't Resp. at 17 (citing AR 355). ████████████ currently employs twenty individuals. 4/21/17 Gov't Resp. at 17 (citing AR 355, 357). ████████████ confirmed that it uses an accounting system approved by the Defense Contract Audit Agency. 4/21/17 Gov't Resp. at 17 (citing AR 358). ████████████ has performed contracts requiring work similar to the November 1, 2016 Solicitation, including work performed in Korea, Egypt, and Taiwan. 4/21/17 Gov't Resp. at 17–18 (citing AR 358).

**f.** ████████████

The USASAC had a reasonable expectation that ████████████████ was a responsible "small business." 4/21/17 Gov't Resp. at 18 (citing AR 424–55). First, ████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 18 (citing AR 425). The Administrative Record evidences that ████ has the technical capabilities, administrative capability, and personnel to perform the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 18 (citing AR 429–39). ████ indicated that it would be able to perform at least 51% of the overall contract requirements. 4/21/17 Gov't Resp. at 18 (citing AR 429). ████ has the capacity to engage more than 200 professionals and its largest business sub-contractor employs more than 700 personnel. 4/21/17 Gov't Resp. at 18 (citing AR 433). In addition, ████ confirmed that it uses an accounting system approved by the Defense Contract Audit Agency. 4/21/17 Gov't Resp. at 18 (citing AR 435). ████ and its sub-contractors have performed contracts ranging in value from $3.7 million to $212 million and requiring the efforts of as many as 338 FTE employees. 4/21/17 Gov't Resp. at 19 (citing AR 431–32). ████ has performed contracts in more than 100 countries. 4/21/17 Gov't Resp. at 19 (citing AR 435).

**g.** ████████████

The USASAC had a reasonable expectation that ████████████████ was a responsible "small business." 4/21/17 Gov't Resp. at 19 (citing AR 466–81). First, ████ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size. 4/21/17 Gov't Resp. at 19 (citing AR 467). The Administrative Record evidences that ████ has the technical capabilities, administrative capability, and personnel to perform the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 19 (citing AR 467–77). In addition, ████ indicated that it has the resources to perform up to 100% of the contract requirements and would perform more than 50% of the cost of contract performance. 4/21/17 Gov't Resp. at 20 (citing AR 467). ████ currently has forty-six employees and experience managing sub-contractors. 4/21/17 Gov't Resp.

at 20 (citing AR 471, 477).  ███  indicated that it uses an accounting system approved by the Defense Contract Audit Agency.  4/21/17 Gov't Resp. at 20 (citing AR 474–75).  ███  has FMS experience and is currently a sub-contractor of a USASAC contract.  4/21/17 Gov't Resp. at 20 (citing AR 356–57).  ███'s FMS experience includes work performed outside the United States. 4/21/17 Gov't Resp. at 20 (citing AR 474).

### h. ███████

The USASAC had a reasonable expectation that ██████████ was a responsible "small business."  4/21/17 Gov't Resp. at 21 (citing AR 502–14).  First, ███ identified as a "small business" under NAICS Code 541611, *i.e.*, Administrative Management and General Management Consulting Services, with a $15 million receipt size.  4/21/17 Gov't Resp. at 21 (citing AR 504).  The Administrative Record evidences that ███ has the technical capabilities, administrative capability, and personnel to perform the November 1, 2016 Solicitation.  4/21/17 Gov't Resp. at 21 (citing AR 504–11).  In addition, ███ represented that it could perform more than 50% of the cost of contract performance with twenty-one capable employees working with experienced sub-contractors.  4/21/17 Gov't Resp. at 21 (citing AR 504, 506).  In addition, ███ uses an accounting system that is approved by the Defense Contract Audit Agency.  4/21/17 Gov't Resp. at 21 (citing AR 507).  ███ also has relevant experience, with three similar contracts that required security assistance, FMS services, as well as management services on a $3 billion program.  4/21/17 Gov't Resp. at 21 (citing AR 505–06).  ███ also had current and prior contracts with the Deputy Assistant Secretary of the Army, Defense Exports and Cooperation, the Arms Transfer Technology Release Senior Steering Group, and the United States Air Force.  4/21/17 Gov't Resp. at 21–22 (citing AR 513–14).  And, ███ has performed contracts outside the United States.  4/21/17 Gov't Resp. at 22 (citing AR 507–08).

Therefore, the Administrative Record demonstrates that the Contracting Officer's Rule of Two determination was reasonable.  4/21/17 Gov't Resp. at 22–25.  The Contracting Officer reviewed the August 9, 2016 Market Research Report and determined that it "fully supports a reasonable expectation that the Army would receive offers from at least two responsible small businesses[.]"  4/21/17 Gov't Resp. at 23.  In addition, the Contracting Officer reasonably expected to receive offers at fair market prices, based on "the anticipated number of capable small businesses . . . to be participating in the eventual competition."  4/21/17 Gov't Resp. at 24.  Because the Contracting Officer determined that the Rule of Two was met, he was obligated under 48 C.F.R. § 19.502-2(b) to set aside the November 1, 2016 Solicitation for small businesses.  4/21/17 Gov't Resp. at 24–25.

Sigmatech impermissibly attempts to substitute its own business judgment for that of the Contracting Officer.  4/21/17 Gov't Resp. at 25 (citing *R&W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003) ("when a [contracting] officer's decision is reasonable a court may not substitute its judgment for that of the agency")).  Sigmatech's focus on total contract price to determine whether the eight "small business" potential bidders were capable of performing the requirements of the November 1, 2016 Solicitation is contradictory to the USASAC's analysis of the responses to the June 6, 2016 RFI.  4/21/17 Gov't Resp. at 26.

Moreover, the Contracting Officer was not required to conduct an analysis of the eight "small business" potential bidders' use of subcontractors and whether they would be able to

perform the requirements at fair market prices, because the Contracting Officer is not required to conduct this type of analysis before making a set-aside decision. 4/21/17 Gov't Resp. at 29–30. (citing *Adams & Assocs., Inc. v. United States*, 741 F.3d 102, 111 (Fed. Cir. 2014) ("*Adams & Assocs. II*") (holding that the Rule of Two does not "require[] two separate, but inter-related, decisions—one as to responsibility, and one as to a form of price reasonableness," because that would "conflate[] a set-aside determination with a responsibility determination made pursuant to 48 C.F.R. § 9.104-1")).

Finally, differences in the requirements of the December 11, 2015 Solicitation and the November 1, 2016 Solicitation are irrelevant, because requirements created by another contracting officer, for another solicitation, have no bearing on whether the Contracting Officer properly applied the Rule of Two to the November 1, 2016 Solicitation. 4/21/17 Gov't Resp. at 31–32 (citing *Guardian Moving & Storage Co. v. United States*, 122 Fed. Cl. 117, 132 (2015) ("[A]n agency is not bound by its actions in a previous procurement.")).

### 3.   Plaintiff's Reply.

Sigmatech responds that an analysis focused on contract value is the only objective way to measure whether the similar efforts were of a similar "size and complexity," as required by the June 6, 2016 RFI. 5/5/17 Pl. Reply at 11. Since the USASAC evaluators relied upon "self-serving" and unverified statements made by the eight "small businesses" in their responses to the June 6, 2016 RFI, the Contracting Officer's Rule of Two analysis was improper. 5/5/17 Pl. Reply at 10–12. In addition, the USASAC did not inquire into the identity and made unsupported assumptions about the eight "small business" potential bidders' use of subcontractors. 5/5/17 Pl. Reply at 16. The USASAC also improperly considered the relevant experience of subcontractors, in evaluating whether the eight "small business" potential bidders were "capable" of performing the November 1, 2016 Solicitation. 5/5/17 Pl. Reply at 16–17.

In sum, the Contracting Officer's determination that the Rule of Two was met was arbitrary and capricious, because the responses to the June 6, 2016 RFI indicate that the eight "small business" potential bidders did not have the necessary experience or required personnel to perform the contract. 5/5/17 Pl. Reply at 18–28.

### 4.   The Government's Reply.

The Government replies that Sigmatech insists that the court must substitute its judgment for that of the Contracting Officer. 5/18/17 Gov't Reply at 9; *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 ("[A] court is not to substitute its judgment for that of the agency[.]").

The November 1, 2016 Solicitation did not require a small business awardee to perform 100% of a set-aside solicitation; instead, a small business awardee must incur "[a]t least 50 percent of the cost of contract performance" for a set-aside contract. 5/18/17 Gov't Reply at 9 (quoting 48 C.F.R. § 52.219-14(c)(1)); *see also* AR 873. The estimated cost of the November 1, 2016 Solicitation is $96,875,000, over a period of five years, or about $19,375,000 annually. Therefore, under the requirements of 48 C.F.R. § 52.219-14(c)(1), to set aside the November 1, 2016 Solicitation, the Contracting Officer was required to have a reasonable expectation that employees of a "small business" respondent would incur more than $9,687,500 of the annual cost of contract

performance.  5/18/17 Gov't Reply at 9.  Sigmatech, however, mistakenly assumed that: an awardee must generate $19 million a year; five of the eight "small business" potential bidders had an average of annual revenues of less than $11 million for the last three years; and none of the eight "small business" potential bidders would be capable of performing the November 1, 2016 Solicitation.  5/18/17 Gov't Reply at 9–10 (citing 5/5/17 Pl. Reply at 1, 15 n.11).  To comply with FAR 52.219-14, a small business awardee is required to incur approximately $9.7 million of the annual cost of contract.  5/18/17 Gov't Reply at 9; *see also* 48 C.F.R. § 52.219-14(c)(1) ("Limitations on Subcontracting").  At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern.").  Therefore, the Contracting Officer's determination that companies that managed $7 to $11 million annually were able to perform the requirements of the November 1, 2016 Solicitation was reasonable.  5/18/17 Gov't Reply at 9–10.

Regardless, the USASAC was not required to inquire whether a subcontractor could fulfill the contract, since this is a *responsibility* determination and it is premature to consider this issue, since the sub-contractors provided "more than the minimum information necessary" at this juncture.  5/18/17 Gov't Reply at 10–11 (citing 48 C.F.R. § 10.001(b) ("When conducting market research, agencies should not request potential sources to submit more than the minimum information necessary.")); *see also Adams & Assocs. II*, 741 F.3d at 111 (rejecting protestor's attempt to "conflate[] a set-aside determination with a responsibility determination").  5/18/17 Gov't Reply at 11.

Moreover, prior procurement efforts, concerning other contracting officers and different solicitations have no bearing on the reasonableness of the Contracting Officer's decision to set aside *this* Solicitation.  5/18/17 Gov't Reply at 12 (citing *Guardian Moving & Storage Co.*, 122 Fed. Cl. at 132 ("[A]n agency is not bound by its actions in a previous procurement.")).

### 5.   The Court's Resolution.

The Rule of Two requires the contracting officer to "set aside any acquisition over $150,000 for small business participation, when there is a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices." 48 C.F.R. § 19.502-2(b).  The contracting officer's decision to set aside a solicitation "is a matter of business judgment within the contracting officer's discretion and, as such, must be upheld unless the [c]ourt finds the decision to be 'arbitrary, capricious, an abuse of discretion[,] or otherwise not in accordance with law.'"  *Benchmade Knife Co. v. United States*, 79 Fed. Cl. 731, 738 (2007) (quoting 5 U.S.C. § 706(2)(A)).  This standard "requires only that the agency's decision be supported by a rational basis."  *Mgmt. & Training Corp. v. United States*, 115 Fed. Cl. 26, 44 (2014) (citing 28 U.S.C. § 1491(b)(4)).  In addition, although "the assessment [of the availability of small businesses] must be based on sufficient facts so as to establish its reasonableness, no particular method of assessing the availability of small businesses is required."  *Id.* (internal quotation marks and citations omitted); *see also Res-Care, Inc.*, 735 F.3d at 1390–91 (holding that there was no abuse of discretion in the contracting officer's thorough analysis of materials submitted by potential bidders in response to a "Request for Information"); *Adams & Assocs., Inc. v. United States*, 109 Fed. Cl. 340, 356 (Fed. Cl. 2013), *aff'd*, 741 F.3d 102 (Fed. Cir. 2014) ("*Adams & Assocs. I*") ("While the Rule of Two analysis was not extensive, an extensive analysis was not required.").

The Rule of Two also does not require the contracting officer to find that any two specific small businesses are responsible; the contracting officer only must "reasonably expect" that two responsible small businesses will submit offers. *See Adams & Assocs. II*, 741 F.3d at 111 ("a set-aside determination requires only that the contracting officer have a reasonable expectation that likely small business offerors will survive a future responsibility determination"); *see also McKing Consulting Corp. v. United States,* 78 Fed. Cl. 715, 726 (2007) ("[T]he actual merits of the individual bids are not dispositive on the issue of the reasonableness of the contracting officer's expectations."); *Greenleaf Constr. Co. v. United States,* 67 Fed. Cl. 350, 361 (2005) ("The logic behind the Rule [of Two] is obvious—it may not be possible for a [contracting officer] to gauge bidder responsibility and price fairness before a solicitation is even issued.").

In this case, the Administrative Record evidences that the Army evaluated responses to the June 6, 2016 RFI "to identify . . . sources with the technical capability and necessary resources to provide programmatic support services for the USASAC, and FMS Enterprise Security Assistance (SA)/FMS." AR 613. The twenty-seven responses received provided the USASAC with information regarding relevant performance experience, current resources and personnel, administrative capabilities, percentage of the contract that the small business could perform with in-house resources, past experience with different funding schemes, ability to transition contracts within thirty days, management of sub-contractors, use of an approved accounting system, and experience performing work outside of the United States. AR 118–540. Six USASAC officials independently analyzed the RFI responses before reaching a consensus. AR 605. Next, the USASAC determined that of the twenty-three "small businesses" that responded, eight "demonstrat[ed] all required services with potential to successfully provide [the] requirements [of the November 1, 2016 Solicitation]." AR 6055, 613. The USASAC published the procedure and analysis undertaken in the August 9, 2016 Market Research Report. AR 604–13. The Contracting Officer reviewed the USASAC's August 9, 2016 Market Research Report and found that it "indicate[d] there [was] a reasonable expectation offers [would] be obtained from at least two responsible small business concerns, and award [would] be made at fair market prices based on the anticipated number of capable small business[es] . . . to be participating in the eventual competition."[7] AR 794, 1402. Because the Contracting Officer determined that the Rule of Two was met, he was obligated to set aside the November 1, 2016 Solicitation for small businesses, pursuant to 48 C.F.R. § 19.502-2(b).

Sigmatech advances several arguments to support the assertion that the Contracting Officer's small business set-aside decision was arbitrary and capricious, all of which focus on

---

[7] FAR 15.404-1(b)(2)(i) provides

The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following:

(i) Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes a fair and reasonable price[.]

48 C.F.R. § 15.404-1.

whether it was reasonable for the Contracting Officer to determine that the eight "small business" potential bidders were *capable* of performing the requirements of the November 1, 2016 Solicitation. 3/24/17 Pl. Mot.  But, the FAR does not require the Contracting Officer to determine "capability" when making a Rule of Two determination.  The Contracting Officer is required only to have "a *reasonable expectation* that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices." 48 C.F.R. § 19.502-2(b) (emphasis added).

Sigmatech, however, conflates a Rule of Two set-aside determination with a responsibility determination made under FAR 9.104-1.[8]  The Rule of Two "determines whether there is a reasonable expectation that at least two responsible small businesses will make an offer at fair market prices, while the latter [*i.e.,* a responsibility determination] determines whether an individual contractor is responsible in the context of awarding a contract."  *See Adams & Assocs. II*, 741 F.3d at 111.  Therefore, at this stage in the procurement process, *i.e.,* pre-award, the Contracting Officer is not required to determine that any two particular small businesses are responsible; *the Contracting Officer need only reasonably expect that two responsible small businesses will submit offers*.  *See Adams & Assocs. II*, 741 F.3d at 111; *see also McKing Consulting Corp.*, 78 Fed. Cl. at 726 ("[T]he actual merits of the individual bids are not dispositive on the issue of the reasonableness of the contracting officer's expectations."); *Greenleaf Constr. Co.*, 67 Fed. Cl. at 361 ("The logic behind the Rule [of Two] is obvious—it may not be possible for a [contracting officer] to gauge bidder responsibility and price fairness before a solicitation is even issued.").  For this reason, the United States Court of Federal Claims has determined that "the fact that six small businesses responding to the RFI, standing alone, could have been sufficient to form a reasonable expectation of offers from two responsible small businesses."  *Mgmt. & Training Corp.*, 118 Fed. Cl. 155, 170 (Fed. Cl. 2013) (citing *McKing Consulting Corp.*, 78 Fed. Cl. at 725 ("If four companies expressed interest in the project before the actual Solicitation was even issued, the contracting officer certainly could have reasonably expected that at least two of those companies would submit responsive bids.")).

The court's decisions also have emphasized that the "threshold for meeting the criteria of the Rule of Two is purposely low[.]"  *Adams & Assocs. I*, 109 Fed. Cl. at 357, *aff'd*, 741 F.3d 102 (Fed. Cir. 2014).  This is so, because the Rule of Two is part of a larger FAR framework established to benefit small businesses:

> It is the policy of the Government to provide maximum practicable opportunities in its acquisitions to small business[.]

48 C.F.R. § 19.201(a).

One such opportunity is the small-business set-aside, the "purpose" of which "is to award certain acquisitions exclusively to small business concerns," *id.* § 19.501(a), and a set-aside "ha[s] priority over acquisitions using full and open competition." *Id.* § 19.203(e).  The FAR framework

---

[8]  FAR 9.104-1 provides the general standards a prospective contractor must meet to be determined "responsible," including "hav[ing] adequate financial resources to perform the contract, or the ability to obtain them."  28 C.F.R. 9.104-1(a).

also provides the Contracting Officer with flexibility to withdraw a set-aside where no responsible offers are made or where proposals are not made at a fair market price.  Specifically,

> after the solicitation, when the contracting officer reviews proposals, he will conduct a responsibility determination pursuant to FAR part 9.104–1, which takes into account all of the bidder's "existing commercial and governmental business commitments," past performance, capacity, and capability.  If there are no acceptable offers from responsible small businesses in response to a set-aside, then FAR part 19.502-2(a) states that "the set-aside shall be withdrawn and . . . be resolicited on an unrestricted basis."  . . . Additionally, if the proposals do not initially reflect a fair market price, then a fair price may be negotiated pursuant to FAR part 15, and "[e]xcept as authorized by law, a contract may not be awarded as a result of a small business set-aside if the cost to the awarding agency exceeds the fair market price."

*Adams & Assocs. I*, 109 Fed. Cl. at 357, *aff'd*, 741 F.3d 102 (Fed. Cir. 2014) (quoting 48 C.F.R. § 19.501(g)).

For these reasons, the court has determined that the Contracting Officer's August 10, 2016 decision to set aside the November 1, 2016 Solicitation for small businesses was neither arbitrary nor capricious, because the "small business" potential bidder information gathered through the June 6, 2016 RFI and the USASAC's August 9, 2016 Market Research Report provided the Contracting Officer with sufficient facts to form "a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices."  48 C.F.R. § 19.502-2(b).

## IV.    CONCLUSION.

For these reasons, Sigmatech's March 24, 2017 Motion For Judgment On The Administrative Record is denied.  The Government's April 21, 2017 Cross-Motion For Judgment On The Administrative Record is granted.  All other pending motions are dismissed as moot.

The Clerk of the United States Court of Federal Claims is directed to enter judgment on behalf of the Government.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**