# In the United States Court of Federal Claims

No. 17-183 C

Filed: February 27, 2018[*]

|  |  |
|---|---|
| SIGMATECH, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | 15 U.S.C. § 631(a) (Commerce and Trade, Aid to Small Business, Declaration of Policy);<br>13 C.F.R. § 121.201 (North American Industry Classification System Size Standards);<br>48 C.F.R. § 9.104-1 (General Standards); § 10.001(b) (Market Research Policy); § 19.502-2(b)(1)–(2) (the "Rule of Two");<br>Rule of the United States Court of Federal Claims ("RCFC") 62(c) (Stay of Proceedings to Enforce a Judgment, Injunction Pending an Appeal). |

**Roderic G. Steakley**, Sirote & Permutt, P.C., Huntsville, Alabama, Counsel for Plaintiff.

**Agatha Koprowski**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER DENYING PLAINTIFF'S MOTION FOR AN INJUNCTION, PENDING APPEAL

**BRADEN**, *Chief Judge*.

    This Memorandum Opinion And Final Order denies Sigmatech Inc.'s ("Sigmatech") January 30, 2018 Motion For An Injunction, Pending Appeal. The January 30, 2018 Motion was filed, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 62(c), pending Sigmatech's appeal of *Sigmatech, Inc. v. United States*, No. 17-183C, 2018 WL 314850 (Fed. Cl. Jan. 5, 2018).

---

[*] On February 20, 2018, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to redact any confidential and/or privileged information from the public version and note any citation or editorial errors that require correction on or by February 27, 2018. The parties did not propose any redactions or revisions. ECF Nos. 66, 67.

The factual and procedural background relevant to Sigmatech's January 30, 2018 Motion is set forth in *Sigmatech, Inc.*, No. 17-183C, 2018 WL 314850 at *1–6, that determined that "the Contracting Officer's ["CO"] August 10, 2016 decision to set aside the November 1, 2016 Solicitation [as a] small business[ set-aside] was neither arbitrary nor capricious, because the 'small business' potential bidder information gathered through the June 6, 2016 [Request For Information ("RFI")] and the [United States Army Security Assistance Command ("USASAC")]'s August 9, 2016 Market Research Report provided the [CO] with sufficient facts to form 'a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices.'" *Id.* at *16 (quoting 48 C.F.R. § 19.502-2(b)[1]).

**I.      Jurisdiction.**

RCFC 62(c) states that "[w]hile an appeal is pending from a[] . . . final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." RCFC 62(c); *see also J.W.K. Int'l Corp. v. United States*, 49 Fed. Cl. 364, 366 (Fed. Cl. 2001) (determining that "jurisdiction to grant a stay of the [c]ourt's own judgment continues to reside in [the United States Court of Federal Claims] until the [United States] Court of Appeals [for the Federal Circuit] issues its mandate") (citations omitted).

The Government's April 21, 2017 Cross-Motion And Response argues that Sigmatech waived injunctive relief, because it failed to address entitlement to such relief in Sigmatech's March 24, 2017 Motion For Judgment On The Administrative Record. 4/21/17 Gov't Mot. at 36.

Sigmatech's May 5, 2017 Reply counters that it did not waive injunctive relief, because the March 24, 2017 Motion For Judgment On The Administrative Record stated that "the [Army]'s decision is due to be vacated and the [Army] should be required to issue the November 1, 2016 Solicitation on a Full and Open basis or such additional relief as the Court may deem appropriate." 5/5/17 Pl. Reply at 28 (quoting 3/24/17 Pl. Mot. at 8). Sigmatech also adds that the prayer for relief evidences that it did not waive any argument for injunctive relief. 5/5/17 Pl. Reply at 28.

In this case, the court's December 29, 2017 Memorandum Opinion And Final Order denied Sigmatech's March 24, 2017 Motion For Judgment On The Administrative Record and granted the Government's April 21, 2017 Cross-Motion. *See Sigmatech, Inc.*, No. 17-183C, 2018 WL 314850, at *16. As such, it was not necessary for the court to address whether Sigmatech waived a request for injunctive relief, since any such argument would be moot. *Id.* at 16. Therefore, the court did not "grant[], dissolve[], or den[y] an injunction[.]" RCFC 62(c). Nevertheless, since the court's December 29, 2017 Memorandum Opinion And Final Order denied Sigmatech relief that would have been the equivalent of injunctive relief, the court has determined today that it has jurisdiction to adjudicate Sigmatech's January 30, 2018 Motion For An Injunction, Pending

---

[1] FAR 19.502-2(b) requires that a CO "set aside any acquisition over $150,000 for small business participation[,] when there is a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices[.]" 48 C.F.R. § 19.502-2(b) (the "Rule of Two").

Appeal. *See Lawson Envtl. Servs, LLC v. United States*, 128 Fed. Cl. 14, 17 (Fed. Cl. 2016) ("by declining to declare the award illegal, the [c]ourt refused to set aside the contract or grant what would have been tantamount to injunctive relief . . . . [Therefore, RCFC] 62(c) is the proper procedural vehicle for the relief Plaintiff now seeks").

## II. Standard Of Review For Issuing A Stay, Pending Appeal.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *see also Lawson Envtl. Servs, LLC*, 128 Fed. Cl. at 17 ("An injunction pending appeal pursuant to Rule 62(c) is an extraordinary remedy[.]"); 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (3d ed. 2004) ("a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion"). The movant bears the burden of persuasion, when requesting that the court grants an injunction. *See Lawson Envtl. Servs, LLC*, 128 Fed. Cl. at 17.

In deciding whether a party is entitled to injunctive relief, the court must consider the following factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990). And, "[e]ach factor . . . need not be given equal weight." *Id.* Therefore, the court's consideration may allow for an injunction pending appeal, when the movant "establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a *substantial* case on the merits," provided the other factors weigh in favor of the movant. *Id.* at 513 (emphasis in original).

## III. The Court's Resolution.

### A. Sigmatech, Inc. Has Failed To Show A Likelihood Of Success On The Merits.

"[L]ikelihood of success on the appeal is not a rigid concept." *Standard Havens Prods., Inc.*, 897 F.2d at 512. But, "where a movant seeks to relitigate several issues that the opinion addressed fully and resolved or otherwise failed to raise issues with the opinion that are so novel as to merit the extraordinary remedy of injunctive relief pending appeal, the [c]ourt will deny an injunction." *Lawson Envtl. Servs, LLC*, 128 Fed. Cl. at 17 (internal quotation marks and citation omitted).

Sigmatech insists that it is likely to succeed on the merits on appeal for four reasons: (1) Amendments 3 and 4 to the November 1, 2016 Solicitation establish that the Rule of Two decision was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law; (2) a subcontractor's Army FMS systems experience cannot be considered to satisfy the Rule of Two; (3) the court's Rule of Two analysis was flawed; and (4) the Army failed to perform the required market research to ascertain the proposed bidders' technical acceptability. 1/30/18 Pl. Mot. at 8–28.

1.  **Amendments 3 And 4 To The November 1, 2016 Solicitation Do Not Establish That The Rule Of Two Decision Was Arbitrary, Capricious, An Abuse Of Discretion, Nor Otherwise Contrary To Law.**

First, Sigmatech argues that "Amendments 3 and 4 [of the November 1, 2016 Solicitation] prove that the [Army's] Rule of Two decision was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law," because "both amendments show[] that the [Army]'s market research was fundamentally flawed." 1/30/18 Pl. Mot. at 8–9.

Amendment 3 did not change the corporate experience requirement of the November 1, 2016 Solicitation, as it simply restated the requirement that an offeror must have Army-specific FMS corporate experience to satisfy the technical requirement. *Compare* AR 887 (November 1, 2016 Solicitation) (requiring that all proposals demonstrate experience with "[p]rogram management support and recommendations for Army FMS systems"), *with* ECF No. 39-1 (Amendment 3) ("The Government will not accept corporate experience project reference other than US Army FMS Systems"). The November 1, 2016 Solicitation also permitted offerors to include the corporate experience of their major sub-contractors, when reporting FMS corporate experience. AR 887 ("Projects submitted to demonstrate experience must address experience as an entity . . . [and] *'Entity' can include the corporate experience of major subcontractor(s)*[.]" (emphasis added)); *see also* AR 920 (stating that the corporate experience requirement "includes the Offeror and any proposed subcontractors"). Therefore, Amendment 3 did not change the corporate experience requirement of the November 1, 2016 Solicitation.

Likewise, Amendment 4 maintained the November 1, 2016 Solicitation's requirement that an offeror must have one year of corporate experience since 2013. AR 887; ECF No. 42-2 at 36 (Amendment 4). The November 1, 2016 Solicitation required offerors to have "one year of [corporate] experience within the last three years," *i.e.*, since 2013, (AR 887). But, the Army did not accept offerors until August 2017, because Sigmatech filed a bid protest on November 15, 2016 with the Government Accountability Office, (AR 1000), and on February 7, 2017 in the United States Court of Federal Claims, ECF No. 1. To account for the additional time required to adjudicate Sigmatech's bid protests, Amendment 4 states that an offeror "must have one (1) year of [corporate] experience within the last (4) years[.]" ECF No. 42-2 at 42. In addition, Sigmatech views Amendment 4 as improperly changing "the [Army]'s Source Selection Plan[.]" 1/30/18 Pl. Mot. at 11. But, the Army's Source Selection Plan, marked "FOR OFFICIAL USE ONLY," was an internal Army document, "provid[ing] the strategy for the source selection of this acquisition." AR 916, 920. Source selection plans do not afford any rights to offerors; instead, the text of the solicitation governs the procurement. *See Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 41 (Fed. Cl. 2010) ("[T]his [c]ourt consistently has held that source selection plans and other internal documents are guidelines that do not give any rights to offerors."), *aff'd on other grounds*, 649 F.3d 1320 (Fed. Cir. 2011). Therefore, Amendment 4 was entirely consistent with the corporate experience requirement of the November 1, 2016 Solicitation.

4

>  2.  **The November 1, 2016 Solicitation Permits The Army To Consider The Army FMS Systems Experience Of The Offeror And Its Major Subcontractors.**

Second, Sigmatech argues that the court "erred in determining that the [Army] had a rational factual basis for finding that any of the bidders possessed relevant corporate experience[, because] . . . the [November 1, 2016] Solicitation required offerors to demonstrate at least one example of their own creditable corporate experience as a prime contractor, including the required 'Army FMS systems' experience." 1/30/18 Pl. Mot. at 12–13 (citing AR 994). The court, however, did not determine "that the [Army] had a rational factual basis for finding that any of the bidders possessed relevant corporate experience." 1/30/18 Pl. Mot. at 12. Instead, the court determined that "the [CO]'s August 10, 2016 decision to set aside the November 1, 2016 Solicitation for small businesses was neither arbitrary nor capricious, because the 'small business' potential bidder information gathered through the June 6, 2016 [Request For Information ("RFI")] and the [United States Army Security Assistance Command ("USASAC")]'s August 9, 2016 Market Research Report provided the CO with sufficient facts to form 'a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices.'" *Sigmatech, Inc.*, No. 17-183C, 2018 WL 314850, at \*16 (quoting 48 C.F.R. § 19.502-2(b)). Sigmatech also misreads the November 1, 2016 Solicitation, that explicitly permits the Army to consider the Army FMS systems experience of the offeror and its major subcontractors. AR 886–87 ("Projects submitted to demonstrate experience must address experience as an entity . . . [, and] *'Entity' can include the corporate experience of major subcontractor(s)*[.]") (emphasis added); AR 920 (clarifying that corporate experience "includes the Offeror and any proposed subcontractors").

>  3.  **The Court's December 29, 2017 Memorandum Opinion And Final Order Determined That The FAR Does Not Require The CO To Determine "Capability," When Making A Rule Of Two Determination.**

Third, Sigmatech argues that the court "failed to apply the [Army]'s stated requisite methodology for conducting a Rule of Two analysis." 1/30/18 Pl. Mot. at 15. Sigmatech raised this argument in the March 24, 2017 Motion (3/24/17 Pl. Mot. at 30) and it was addressed in the court's December 29, 2017 Memorandum Opinion And Final Order, as follows:

> Sigmatech advances several arguments to support the assertion that the [CO]'s small business set-aside decision was arbitrary and capricious, all of which focus on whether it was reasonable for the [CO] to determine that the eight "small business" potential bidders were *capable* of performing the requirements of the November 1, 2016 Solicitation. 3/24/17 Pl. Mot. But, the [Federal Acquisition Regulation ("FAR")] does not require the [CO] to determine "capability" when making a Rule of Two determination. The [CO] is required only to have "a *reasonable expectation* that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices." 48 C.F.R. § 19.502–2(b) (emphasis added).

*Sigmatech, Inc.*, No. 17-183C, 2018 WL 314850, at \*15.

Sigmatech's attempt to relitigate this issue does not weigh in favor of the court issuing the "extraordinary remedy of injunctive relief[.]" *See Lawson Envtl. Servs, LLC*, 128 Fed. Cl. at 17 (internal quotation marks and citation omitted).

### 4. The Army's Market Research Had A Rational Basis And Was Conducted In Accordance With FAR Part 10.

Fourth, Sigmatech argues, for this first time, that "[t]he [Army]'s market research lacked a rational basis and was not in accordance with FAR Part 10, [because] . . . the [Army] did not consider all the requirements of the [Performance Work Statement] in evaluating the technical capabilities of the [RFI] respondents." 1/30/18 Pl. Mot. at 17. Specifically, the Army should have evaluated the proposed bidders' responses to RFI Question 16, based on the seventy-five detailed tasks listed in Paragraphs C.13.3 through C.13.4.3 of the Performance Work Statement, instead of the general requirements listed in Paragraph C.13.2. 1/30/18 Pl. Mot. at 17–20 (citing AR 50–53 (RFI); AR 66–77 (Performance Work Statement)).

FAR Part 10 provides that an agency has substantial discretion in determining how much and what type of market research is "appropriate to the circumstances" for the purpose of "[d]etermining if sources capable of satisfying the agency's requirements exist." 48 C.F.R. § 10.001(a); *see also Assessment and Training Solutions Consulting Corp. v. United States*, 96 Fed. Cl. 772 (Fed. Cl. 2010) (determining that the CO's market research and set-aside decision were reasonable, in light of the "regulatory guidance [provided in FAR Part 10] and the discretion afforded the agencies and contracting officers in making such procurement-related determinations"). Moreover, FAR Part 10 provides that "[w]hen conducting market research, agencies should not request potential [bidders] to submit more than the minimal information necessary." 48 C.F.R. § 10.001(b).

In this case, the Army determined that the "minimal information necessary" to make a Rule of Two determination was set forth in Paragraph C.13.2 of the Performance Work Statement, that includes eight general requirements: (1) Human Resource Support; (2) Resource Management Support; (3) Program Management Plans & Integration; (4) Cost Estimating/Analysis; (5) Schedule Development/Assessment; (6) Analysis and Workforce Development; (7) International Program Support; and (8) Security Assistance Program Support. AR 66 (draft Performance Work Statement issued with RFI); AR 842 (Performance Work Statement issued with November 1, 2016 Solicitation). In addition, the RFI requested information about the

> expertise [the offeror] possess[es] in providing support services in the following areas: human resources, program management, cost estimating/analysis, schedule development & assessment, analysis & leadership development, international program support, security assistance program that includes planning, coordination, implementation, and monitoring or assigned equipment on FMS cases with multiple FMS customers?

AR 8–9 (RFI Question 16); *see also* AR 553, 555, 558, 561, 564, 567, 570, 581, 587 (USASAC excel spreadsheets evaluating offerors' RFI Question 16 responses, based on this criteria).

The purpose of the RFI was to request information relevant to the general requirements of contract performance, so that the CO could determine whether the Rule of Two was met, *i.e.,* whether "there is a reasonable expectation that: (1) [o]ffers will be obtained from at least two responsible small business concerns . . . ; and (2) [a]ward will be made at fair market prices." 48 C.F.R. § 19.502-2(b); AR 1747–48. As court's December 29, 2017 Memorandum Opinion And Final Order explained:

> The Rule of Two . . . does not require the [CO] to find that any two specific small businesses are responsible; the [CO] only must "reasonably expect" that two responsible small businesses will submit offers. *See Adams & Assocs.*[*, Inc. v. United States*], 741 F.3d [102,] 111 ("a set-aside determination requires only that the [CO] have a reasonable expectation that likely small business offerors will survive a future responsibility determination") ["*Adams & Assocs. II*"]; *see also McKing Consulting Corp. v. United States,* 78 Fed. Cl. 715, 726 (2007) ("[T]he actual merits of the individual bids are not dispositive on the issue of the reasonableness of the [CO]'s expectations."); *Greenleaf Constr. Co. v. United States,* 67 Fed. Cl. 350, 361 (2005) ("The logic behind the Rule [of Two] is obvious—it may not be possible for a CO to gauge bidder responsibility and price fairness before a solicitation is even issued.").

*Sigmatech, Inc.*, No. 17-183C, 2018 WL 314850, at *14.

In addition, the December 29, 2017 Memorandum Opinion And Final Order observed,

> Sigmatech . . . conflates a Rule of Two set-aside determination with a responsibility determination made under FAR 9.104-1. The Rule of Two "determines whether there is a reasonable expectation that at least two responsible small businesses will make an offer at fair market prices, while the latter [*i.e.,* a responsibility determination] determines whether an individual contractor is responsible in the context of awarding a contract." *See Adams & Assocs. II*, 741 F.3d at 111. Therefore, at this stage in the procurement process, *i.e.,* pre-award, the [CO] is not required to determine that any two particular small businesses are responsible; *the [CO] need only reasonably expect that two responsible small businesses will submit offers*. *See Adams & Assocs. II*, 741 F.3d at 111; *see also McKing Consulting Corp.*, 78 Fed. Cl. at 726 ("[T]he actual merits of the individual bids are not dispositive on the issue of the reasonableness of the [CO]'s expectations."); *Greenleaf Constr. Co.*, 67 Fed. Cl. at 361 ("The logic behind the Rule [of Two] is obvious—it may not be possible for a CO to gauge bidder responsibility and price fairness before a solicitation is even issued."). For this reason, the United States Court of Federal Claims has determined that "the fact that six small businesses respond[ed] to the RFI, standing alone, could have been sufficient to form a reasonable expectation of offers from two responsible small businesses." *Mgmt. & Training Corp.*, 118 Fed. Cl. 155, 170 (Fed. Cl. 2013) (citing *McKing Consulting Corp.*, 78 Fed. Cl. at 725 ("If four companies expressed interest in the project before the actual Solicitation was even issued, the [CO] certainly could have reasonably expected that at least two of those companies would submit responsive bids.")).

*Id.* at *15 (footnote omitted).

Sigmatech also argues that "[t]he [Army]'s market research lacked a rational basis, and was not in accordance with FAR Part 10, [because] . . . the [Army] failed to revisit its technical capability analysis after issuing . . . Amendment 3 (which clarified that only Army [FMS systems] experience would satisfy the [Army's corporate experience] requirements)." 1//30/18 Pl. Mot. at 17–18. The court, however, already determined herein that Amendment 3 did not change the terms of the November 1, 2016 Solicitation with respect to the Army's evaluation of corporate experience. AR 886–87, 920.

For these reasons, the court has determined that Sigmatech has not demonstrated a likelihood of success on the merits of the pending appeal.

### B.   Other Factors Also Warrant Denial Of Injunctive Relief In This Case.

Assuming *arguendo* that Sigmatech demonstrated a likelihood of success on the merits, the remaining factors weigh against granting an injunction.

Sigmatech argues that it will be irreparably harmed absent an injunction pending appeal, because it "will be unable to protest any subsequent award[,] even if the award was made in an unlawful manner" and "should the [United States Court of Appeals for the Federal Circuit] overturn the [court's December 29, 2017 Memorandum Opinion And Final Order], the cancellation of a new award *could* be challenging." 1/30/18 Pl. Mot. at 25 (emphasis added). There is no basis in the Administrative Record or otherwise for such speculation. Nevertheless, Sigmatech asserts that "if injunctive relief is not granted, it will be irreparably harmed by losing a significant portion of its business and will be required to let go of the staff it has trained and developed over the years to provide exemplary support services for the FMS Systems relied upon by USASAC." 1/30/18 Pl. Mot. at 25–26. An unsuccessful protester, however, must show more than a threat "it will be put out of business" to satisfy the irreparable harm factor. *See Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 28–29 (Fed. Cl. 2015).

Sigmatech adds that the balance of hardships "tips sharply" in its favor, because "[t]he [Army] . . . will suffer no harm, if Sigmatech's requested injunctive relief is granted" and "Sigmatech would be significantly harmed if the [Army] is permitted to award the contract[,] because Sigmatech is currently precluded from bidding as a prime and will be precluded from protesting an award." 1/30/18 Pl. Mot. at 26, 27. Sigmatech further reasons that it "is the incumbent . . . and is in a position to continue to provide these services." 1/30/18 Pl. Mot. at 26. "[T]here's the rub." WILLIAM SHAKESPEARE, HAMLET act 3, sc. 1. It is the Army that has been harmed, because Sigmatech's bid protest has delayed the Army's ability to obtain lower-priced and better-value services from a small business.[2]  4/21/17 Gov't Mot. at 37.

---

[2]   Since Sigmatech is no longer a small business under the applicable North American Industry Classification System Code, the Army has been required, while Sigmatech's bid protest is pending, to execute multiple Limited Source Justification and Approvals ("J&As") for more than $15 million to extend FMS services under Sigmatech's incumbent contract, instead of awarding a new contract to a small business. AR 1752 (12/18/15 J&A executed by the USASAC to increase the ceiling amount of Sigmatech's incumbent contract by $3.6 million); AR 1752

8

Finally, Sigmatech argues "[i]t is of primary importance to the public that the services it acquires[,] for the effective functioning of the government[,] . . . be provided by companies capable of providing excellence at a reasonable, competitive price" and that "there be no disruption or degradation in the provision of ongoing services." 1/30/18 Pl. Mot. at 27–28. Here, Sigmatech simply assumes that a small business awardee will not be "capable of providing excellence at a reasonable, competitive price." There is no evidence in Administrative Record, however, to support Sigmatech's argument that there will be a "disruption or degradation in the provision of ongoing services." 1/30/18 Pl. Mot. at 28. Sigmatech also touts that it "is providing these services . . . in an exemplary manner. Therefore, there is no pressing need to issue an award of the contract." 1/30/18 Pl. Mot. at 28. But, "[i]t is the declared policy of the Congress that the Government should aid, counsel, assist, and protect insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the overall economy of the Nation." 15 U.S.C. § 631(a); *see also Data Transformation Corp. v. United States*, 13 Cl. Ct. 165, 175–76 (Cl. Ct. 1987) (determining that small business set-asides benefit the public through small business participation in government contracting). Therefore, Sigmatech's past performance does not entitle it to a contract in perpetuity that precludes or pre-empts the Army from obtaining the potential benefits of lower prices and better services that may be offered by a new market entrant that is a small business.

For these reasons, the court has determined that Sigmatech failed to establish that it is entitled to injunctive relief, pursuant to RCFC 62(c).

**IV.   Conclusion.**

For these reasons, Sigmatech's January 30, 2018 Motion For An Injunction, Pending Appeal is denied.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Chief Judge**

---

(6/29/16 J&A executed by the USASAC to increase the ceiling amount of Sigmatech's incumbent contract by $11.7 million).